# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTONIO M. CERSOSIMO,<br>67 Noblestown Road Rear<br>Carnegie, PA 15106<br><br>       Plaintiff,<br><br>   v.<br><br>CARLOS DEL TORO, in his official capacity<br>as Secretary of the Navy;<br>1200 Navy Pentagon<br>Washington, DC 20350<br><br>ROBERT D. HOGUE, in his official capacity as<br>Assistant Secretary of the Navy (Manpower and<br>Reserve Affairs);<br>1200 Navy Pentagon<br>Washington, DC 20350<br><br>LLOYD J. AUSTIN, III, in his official capacity<br>as Secretary of Defense;<br>1000 Defense Pentagon<br>Washington, DC 20301<br><br>UNITED STATES DEPARTMENT OF THE<br>NAVY;<br>1200 Navy Pentagon<br>Washington, DC 20350<br><br>UNITED STATES DEPARTMENT OF<br>DEFENSE;<br>1000 Defense Pentagon<br>Washington, DC 20301<br><br>NAVAL DISCHARGE REVIEW BOARD;<br>720 Kennon Street SE, Suite 309<br>Washington Navy Yard<br>Washington, DC 20374<br><br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

1

**COMPLAINT**

**INTRODUCTION**

1.      Pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("APA") and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, Plaintiff Antonio M. Cersosimo brings this action for declaratory and injunctive relief against the United States Department of the Navy; Carlos Del Toro, in his official capacity as United States Secretary of the Navy; Robert D. Hogue, in his official capacity as United States Assistant Secretary of the Navy (Manpower and Reserve Affairs); the United States Department of Defense; Lloyd J. Austin, III, in his official capacity as United States Secretary of Defense; and the Naval Discharge Review Board (collectively "Defendants").

2.      On April 30, 2012, Mr. Cersosimo was formally separated from the Marine Corps after nearly two years of active duty service.  Although his administrative separation process included a post-traumatic stress disorder ("PTSD") diagnosis stemming from an in-service sexual assault ("Military Sexual Trauma" or "MST"), Mr. Cersosimo was discharged under "other-than-honorable" conditions based on purported misconduct.

3.      Shortly after his separation, on August 24, 2012, Mr. Cersosimo applied *pro se* to the Naval Discharge Review Board ("Board" or "NDRB") to upgrade the status of his discharge from service, but his request was denied.

4.      In January 2018, Mr. Cersosimo again sought relief from the NDRB and was granted a Personal Appearance Hearing Review ("Hearing") on November 6, 2019.  Despite an evidentiary record and extensive testimony replete with details regarding Mr. Cersosimo's MST and subsequent PTSD diagnosis that affected his service, the Board nevertheless denied the request on November 20, 2019 ("NDRB Decision").  The Board's actions were procedurally and

substantively flawed.  The Board neglected to afford Mr. Cersosimo the basic necessities of discharge review such as a credible and qualified Board, a thorough review of the evidence and consideration of the issues, and a written decision clearly stating the reasons and evidentiary support for denial.  Despite the occurrence of the Hearing, the NDRB Decision was labeled "Documentary Review."  The NDRB Decision was also rendered by a panel consisting of different members than those who had participated in the Hearing, further exhibiting the Decision's disregard for the Hearing itself.  And on the merits, there appears to have been no substantive engagement with the documentary evidence presented by Mr. Cersosimo, or with binding Department of Defense memoranda directly on point.  This suit seeks judicial review of the flawed NDRB Decision.

5.    NDRB decisions concerning discharge-upgrade requests are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence.  Here, the NDRB's ruling on Mr. Cersosimo's discharge upgrade application fails the basic procedural requirement that an agency must give adequate reasons for its decisions.  Specifically, the NDRB Decision fails to grapple with key record evidence.  But more alarmingly, the Board's decision is objectively inequitable and in direct violation of 10 U.S.C. § 1553(d)(3)(A)(i) and (ii) as well as other Department of Defense guidance mandating liberal consideration of claims involving PTSD and sexual trauma.

6.    Mr. Cersosimo accordingly requests that the Court (1) declare that the NDRB Decision is arbitrary and capricious, unsupported by substantial evidence, or otherwise not in accordance with the law; and (2) upgrade his discharge characterization or, in the alternative, set aside the decision and remand for a new Personal Appearance Hearing Review in front of a new panel of the NDRB.  In support, Mr. Cersosimo alleges as follows:

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 2201–2202 because this case raises federal questions under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq* ("APA"), given that Mr. Cersosimo seeks review of an agency action.   Mr. Cersosimo is not required to exhaust available administrative remedies before seeking judicial review under the APA where, as here, neither relevant statute nor agency rules specifically mandate exhaustion as prerequisite to judicial review.

8.      Mr. Cersosimo seeks solely equitable relief in this action, namely, an upgrade of his discharge characterization.

9.      Venue in this Court is proper under 28 U.S.C. § 1391(e)(1) because Defendants are principally located in the District of Columbia.   Additionally. a substantial part of the events giving rise to the claims, including denial of Mr. Cersosimo's previous requests for relief, occurred in the District of Columbia.   Venue is also proper under 5 U.S.C. § 703 because this is a Court of competent jurisdiction.

10.     In accordance with 28 U.S.C. § 2401(a), this action is brought within six years of the NDRB's decision denying relief.

## PARTIES

11.     Plaintiff Antonio Cersosimo is a citizen of the United States and a veteran of the United States Marine Corps.   He is a resident of Carnegie, Pennsylvania.

12.     Defendant the U.S. Department of Navy is one of the three military departments in the Department of Defense ("DoD"), a United States government agency.   It has responsibility for the administration, control, and operation of the United States Navy, a military organization primarily responsible for maritime security and warfare operations, and its sister service, the United States Marines Corps, a military organization primarily responsible for maritime land

combined forces and operations.  The civilian head of the Department of the Navy is the Secretary of the Navy.

13.    Defendant Carlos Del Toro is the United States Secretary of the Navy and is named solely in his official capacity.  He is the chief officer of the Department of the Navy and exercises authority, direction and control over the Navy. Upon information and belief, Defendant Del Toro performs a significant amount of his official duties within the judicial district.  The decision on appeal was issued by the Naval Discharge Review Board ("NDRB"), which is located at 720 Kennon Street, SE, Suite 309, Washington Navy Yard, Washington, DC 20374-5023.

14.    Defendant Robert D. Hogue is the United States Assistant Secretary of the Navy (Manpower and Reserve Affairs) and is named solely in his official capacity.  He oversees the Navy Council Review Boards, including the NDRB.  Upon information and belief, Defendant Hogue performs a significant amount of his official duties within the judicial district.  The decision on appeal was issued by the NDRB, which is located at 720 Kennon Street, SE, Suite 309, Washington Navy Yard, Washington, DC 20374-5023.

15.    Defendant the U.S. Department of Defense ("DoD") is a department of the Executive Branch of the United States Government, and an agency of the United States as defined by the APA and 28 U.S.C. § 1391.  It is responsible for the actions of the entire U.S. Armed Forces, including the U.S. Department of Navy.

16.    Defendant Lloyd J. Austin, III is the United States Secretary of Defense and is named solely in his official capacity.  He is the chief officer of the DoD and exercises authority, direction and control over all service branches administered by the DoD, including the U.S.

Navy.  Upon information and belief, Defendant Austin performs a significant amount of his official duties within the judicial district.

17.    Defendant the NDRB is an organization within the Department of the Navy responsible for reviewing service members' discharges.  The decision on appeal was issued by the NDRB, which is located at 720 Kennon Street, SE, Suite 309, Washington Navy Yard, Washington, DC 20374-5023.

## STATUTORY AND REGULATORY BACKGROUND

18.    Congress passed and the President signed legislation that provides for "a board of review, consisting of not fewer than three members, to review [a] discharge or dismissal . . . of any former member of an armed force under the jurisdiction of his department."  10 U.S.C. § 1553(a).  The NDRB is an administrative board established by the Secretary of the Navy and it is vested with the discretionary authority to review the discharges of former members of the Navy or Marine Corps.  *Id*.

19.    The Board is established pursuant to 10 U.S.C. § 1553 and is a component of the Secretary of the Naval Council of Review Boards.  The Assistant Secretary of the Navy is authorized and directed to act for the Secretary of the Navy within his or her assigned area of responsibility and exercises oversight over the Secretary of the Naval Council of Review Boards. 32 CFR § 724.201.

20.    Reflecting Congress's desire that veterans with erroneous or unjust records have a real, available remedy, the Board's authority is broad and includes the correction of military records through the correction of an applicant's character of discharge (for example, general discharge to honorable discharge) and/or reason for discharge.  32 C.F.R. § 724.802. Applications for review must be submitted within 15 years from the date of the applicant's discharge.  10 U.S.C. § 1553(a).  The objective of a discharge review is to examine the propriety

and equity of an individual's discharge.  The burden in these cases is on the applicant to prove that the discharge characterization was improper or inequitable.  DoD Instruction ("DoDI") 1332.28 E3.2.12.6.  Once a decision is made, the NDRB must issue a decisional document which contains a written recordation of the applicant's summary of service, the issues presented, evidence presented, and the votes of the members.  32 C.F.R. § 724.121.

21.    A review by the Board shall be based on the records of the armed forces concerned and such other evidence as may be presented to the board.  32 C.F.R. § 724.202(a)(3). An applicant may apply for a records review and/or a personal appearance hearing.  DoDI 1332.28 E3.2.3.  A records review is exactly what it sounds like: a review of everything before the Board, including the application, the available service records, and any additional documents submitted by the applicant.  *Id*. at E3.2.3.1.  An applicant may also request a personal appearance hearing, which involves an appearance before the NDRB by the applicant, the applicant's counsel or representative, or both.  *Id*. at E3.2.3.2.

22.    If an applicant requests a personal appearance discharge review, or to be represented in absentia, "the NDRB shall provide a hearing in the NCR [National Capital Region] or at another site within the forty-eight contiguous states."  32 C.F.R. 724.221(a). Further, "[i]n the event a personal appearance discharge review is requested, the applicant shall be notified of the proposed time and place of this review and shall be advised of the availability of the official documents to be considered by the NDRB."  32 C.F.R. § 724.503(c).  The NDRB panel presiding over the decision is instructed to "elicit[] all facts necessary for a full and fair review," including considering "all information presented to them by the applicant."  32 C.F.R. § 724.804(a)-(c).  Voting shall be conducted in closed session, with a majority of the votes of the five members, *i.e.*, the NDRB panel, constituting the NDRB decision.  32 C.F.R. § 724.804(g).

23.    10 U.S.C. § 1553 imposes additional requirements for discharge review of applicants who were diagnosed by a physician, clinical psychologist, or psychiatrist as experiencing service-related PTSD. The NDRB deliberating over the applicant's review shall "include a member who is a clinical psychologist or psychiatrist, or a physician with training on mental health issues connected with post-traumatic stress disorder." *Id.* at § 1553(d)(1)(A). If the applicant claims the PTSD is based, in whole or in part, on sexual trauma, the NDRB "shall seek advice and counsel in the review from a psychiatrist, psychologist, or social worker with training on mental health issues associated with post-traumatic stress disorder or traumatic brain injury or other trauma as specified in the current edition of the Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association." *Id.* at § 1553(d)(1)(B).

24.    In cases involving PTSD relating to sexual trauma, the NDRB must review medical evidence provided by the applicant and "review the case with liberal consideration" that PTSD "potentially contributed to the circumstances resulting in the discharge or dismissal or to the original characterization of the member's discharge or dismissal." 10 U.S.C. § 1553(d)(3)(A)(i) and (ii).

25.    The Department of the Navy's applicable statutes, regulations, manuals, directives, and other written public expressions of policy also guide the NDRB in its conduct of discharge review. 32 C.F.R. § 724.202. Over the past several years in particular, the DoD has issued robust guidance outlining how liberal consideration should be deployed in accordance with 10 U.S.C. § 1553(d)(3)(A)(ii). This guidance is the in form of four interpretive memoranda that provided clarification to the Board with respect to the review of discharge-upgrade applications filed by veterans with mental health conditions or who are survivors of sexual trauma (including sexual assault or sexual harassment). All of these memoranda apply to

veterans who received less-than-honorable discharges as a result of misconduct, including Other than Honorable discharges.

26.    The first of the four memoranda was issued by then Secretary of Defense, Chuck Hagel, on September 3, 2014 (the "Hagel Memo").  The Hagel Memo provides for "special consideration" to be given to VA determinations that document PTSD or PTSD-related conditions connected to military service.  The Hagel Memo further states that "liberal consideration" will be given to petitions in which military medical records document one or more symptoms of PTSD or related conditions.

27.    On February 24, 2016, Brad Carson, the then-acting Under Secretary of Defense, issued a second interpretative memo (the "Carson Memo") which, among other things, directed the Board to waive the imposition of the statute of limitations in cases where veterans claim PTSD or PTSD-related conditions.  The Carson Memo further provides that any previously considered case that was reviewed without the benefit of the application of the interpretive guidance of the Hagel Memo be granted *de novo* review utilizing such interpretive guidance.

28.    Further expanding the guidance set forth in the Hagel and Carson Memos, then Under Secretary of Defense for Personnel and Readiness, Anthony Kurta, issued a memorandum on August 25, 2017 (the "Kurta Memo") providing clarification that the previously issued interpretative guidance should benefit not only those veterans who suffer from PTSD and related conditions, but also any other mental health condition.  The Kurta Memo acknowledges that a "veteran's testimony alone . . . may establish the existence of a condition or experience."  The Kurta Memo reminds the Board that misconduct itself may be evidence of a mental health condition, and further states that liberal interpretation is appropriate for all discharge characterizations, and that liberal consideration is appropriate for requests to change the narrative

reason for separation, separation code, and re-enlistment code. Significantly, the Kurta Memo makes clear that an Honorable discharge does not require flawless service.

29.    On July 25, 2018, then-Under Secretary of Defense Robert Wilkie issued guidance to the Board in order to clarify and assist with determinations involving equity, injustice, or clemency ("the Wilkie Memo"). The Wilkie Memo centers around ideas of fairness and states that "[i]t is consistent with military custom and practice to honor sacrifices and achievements, to punish only to the extent necessary, to rehabilitate to the greatest extent possible, and to favor second chances in situations in which individuals have paid for their misdeeds." The Memo further instructs the Board that "[r]elief should not be reserved only for those with exceptional aptitude; rather character and rehabilitation should weigh more heavily than achievement alone." Finally, the Wilkie Memo includes a list of factors the Board should consider when applicable, including an applicant's "acceptance of responsibility, remorse, or atonement for misconduct," post-discharge conduct, and whether the misconduct may have been a "youthful indiscretion."

## FACTUAL BACKGROUND

### Cersosimo Volunteers to Serve

30.    In 2010, Mr. Cersosimo voluntarily enlisted in the United States Marine Corps for a period of four years when he was 18 years old.

31.    Mr. Cersosimo's connection to the Marine Corps began prior to his enlistment when he was a student at Chartiers Valley High School in Bridgeville, Pennsylvania. Mr. Cersosimo joined the Marine Corps through the Delayed Entry Program ("DEP") about two years prior to his high school graduation. As a DEP recruit, he did extracurricular activities and trained with the Marines in preparation for enrolling in boot camp.

32.    Mr. Cersosimo joined the Marines Corps because he wanted to honorably serve his country and fulfill something within himself.  He was also inspired by members of his family who had served, including his uncle who was a Vietnam veteran.

33.    Mr. Cersosimo entered into active duty on August 16, 2010 at age 19.

34.    During his enlistment physical exam, Mr. Cersosimo reported no prior mental health issues.  The examiner conducting the physical exam noted that he had a normal psychiatric profile.

35.    After enlisting, Mr. Cersosimo completed boot camp and basic training to become an aviation supply specialist.  One of Mr. Cersosimo's most memorable moments was when he received his Eagle, Globe, and Anchor—the Marine Corps emblem—after completing bootcamp. He broke down in tears because he felt this had been the hardest experience of his life, as well as his biggest accomplishment.

36.    After completing boot camp, Mr. Cersosimo was stationed at Marine Corps Base Camp Pendleton in California.  At one point during his service, Mr. Cersosimo was appointed squad leader.  To this day, he remains proud of his service.

37.    Mr. Cersosimo's service was set to end in 2014 and, upon an honorable discharge, he would have been entitled to benefits from the Department of Veterans Affairs ("VA") to address any physical or mental health issues he encountered as a result of his service.

**Military Sexual Trauma and PTSD Diagnosis**

38.    During his Marine Corps service in May 2011, Mr. Cersosimo survived a sexual assault.  While off base in Oceanside, California, he was approached by two civilian men, who he initially believed to be women, in a hotel room.  The men tried to force drinks onto Mr. Cersosimo, which he denied.  After this, they held and groped him against his will.  The men then held him down, pulled off his clothing, and sexually assaulted him.  Mr. Cersosimo was

eventually able to fight the men off, dress himself, and run out of the room.  Mr. Cersosimo reports feeling incredibly shocked, ashamed, embarrassed, angry, and disgusted after the assault occurred.  He experienced nightmares and had trouble sleeping.

39.    The VA characterizes sexual assault experienced during military service as Military Sexual Trauma or MST.  *See* 38 U.S.C. § 1720D(a)(1).

40.    Two days after the assault, Mr. Cersosimo reported the incident to his superiors and they encouraged him to seek medical attention and counseling.

41.    Mr. Cersosimo also went to the police station where he spoke with a police officer and an advocate (Gunnery Sergeant Shinkel) about the incident; however, no immediate action was taken.

42.    Mr. Cersosimo began experiencing the mental health effects of the sexual assault almost immediately.  He spoke with a mental health counselor twice within the first week after his assault, and then was referred to seek medical care.  Mr. Cersosimo received medical care at the Camp Pendleton Naval Hospital Mental Health Clinic less than a week after the assault.

43.    Mr. Cersosimo reported experiencing flashbacks, avoidance, sleep disturbance, irritability/anger, difficulty concentrating, and hypervigilance.  As a result of these symptoms, Mr. Cersosimo received an initial diagnosis of adjustment disorder with anxiety.

44.    Mr. Cersosimo visited the Camp Pendleton Mental Health clinic three more times in June to July 2011, the month after the sexual assault, due to disturbing memories and recurring thoughts about the sexual assault, as well as a continuation of his previous symptoms.  In addition, Mr. Cersosimo experienced debilitating anxiety which prevented him from effectively carrying out his training.  For example, he had experienced increased heart palpitations and

anxiety during a gas chamber training, though the exposure to tear gas was in and of itself not sufficient to cause this reaction.  He also reported thoughts of suicide after the assault.

45.    Mr. Cersosimo was again diagnosed with "adjustment disorder with anxiety" and prescribed Prozac, trazodone, and fluoxetine.  His provider noted that he had "possible PTSD secondary to sexual assault" and he had scored a 63 out of 80 on the PTSD Checklist for DSM-5 (PCL-5).[1]

46.    Mr. Cersosimo continued counseling at the Mental Health Clinic through the summer and fall of 2011.  His medical records from October 2011 (signed by Dr. Robert W. McAlister) indicate that he was diagnosed with chronic post-traumatic stress disorder (PTSD). Dr. McAlister's medical report notes that Mr. Cersosimo was a victim of sexual assault months prior to the visit and experienced PTSD-related symptoms including "numbing, reoccurring flashbacks, hyperarousal, [and] avoiding certain places and/or activities."

### Military Service Record and Separation

47.    After the military sexual assault he endured, Mr. Cersosimo began having behavioral issues.  About two months after the assault, on July 13, 2011, he was found in the possession of "spice" (a synthetic cannabinoid) and was given a non-judicial punishment ("NJP") for the incident.  At the time, Mr. Cersosimo felt lost and resorted to the use of spice in order to disassociate from the traumatic memories of his assault.

48.    Mr. Cersosimo received three more NJPs over the course of his service for various infractions including an unauthorized absence from a training test and counseling class, use of a cell phone, having a woman in his room, entry into another private's room, and drug use.

---

[1] The total symptom severity score on this scale ranges from 0-80.  "Initial research suggests that a PCL-5 cutoff score between 31-33 is indicative of probable PTSD across samples."  PTSD Checklist for DSM-5 (PCL-5), U.S. Dep't. of Veteran Affairs, *available at* https://www.ptsd.va.gov/professional/assessment/adult-sr/ptsd-checklist.asp.

Throughout this time, Mr. Cersosimo continued to suffer from severe mental health symptoms and anxiety attacks as a result of the military sexual assault. The restrictions he was placed under due to the NJPs further contributed to the continued decline of his mental health status. Mr. Cersosimo also felt stigmatized due to his conduct and that he was being labeled a "bad Marine" by his peers. As a result, he felt he did not have an adequate support system at the base.

49.     On January 26, 2012, Mr. Cersosimo's command initiated formal separation proceedings and notified him that he was being separated by reason of misconduct based on his August 4, 2011 NJP for possession of spice. Mr. Cersosimo was again screened for PTSD and traumatic brain injury ("TBI") as part of these involuntary separation proceedings.

50.     In one PTSD screening conducted on January 19, 2012, Dr. Robert W. McAlister, Psy.D. opined that Mr. Cersosimo did not have service-related PTSD symptoms and that "PTSD symptoms are not the basis for [Mr. Cersosimo's] separation." This is in direct contradiction to Dr. McAlister's earlier October 2011 diagnosis. *See* ¶ 46. In another PTSD screening conducted on January 9, 2012, Dr. Tricia V. Skipper validated Mr. Cersosimo's earlier diagnoses of PTSD by noting that Mr. Cersosimo "ha[d] already been evaluated for PTSD and diagnosed with PTSD by Mental Health" on October 4, 2011.

51.     On April 25, 2012, as part of the administrative separation process, the Commander of the 3d Marine Aircraft Wing made a characterization determination in Mr. Cersosimo's case. The Commander stated that his determination took into consideration Mr. Cersosimo's PTSD diagnosis. Despite relying on the determinations made by Dr. McAlister and Dr. Skipper, the characterization inaccurately stated: "since [Mr. Cersosimo's] PTSD diagnosis is a result of *pre-service* trauma and not connected in any way to military service, I recommend

that the Veterans Administration not approve any future requests made by the Respondent for PTSD evaluation and/or follow on treatment."

52.     Neither Dr. McAlister nor Dr. Skipper documented any finding that Mr. Cersosimo had suffered from *pre*-service trauma.  Indeed, as Mr. Cersosimo's medical records establish, his PTSD arose as a result of the sexual assault he suffered while actively serving in the Marines.

53.     Mr. Cersosimo was discharged on April 30, 2012 with an Other Than Honorable Characterization of Service and a narrative reason of "Misconduct (drug abuse)."

54.     Despite his struggles with mental health issues, including PTSD stemming from his sexual assault, Mr. Cersosimo completed over a year of service that warranted a number of honors.  He was awarded the Global War on Terrorism Service Medal, the National Defense Service Medal, a Certification of Appreciation, and a Sharpshooter Rifle Badge.

**Effect of the MST, PTSD, and "Other Than Honorable" Discharge Characterization**

55.     Mr. Cersosimo has suffered significant setbacks since his discharge with an Other than Honorable characterization, including with respect to his mental health status.

56.     Mr. Cersosimo sought mental health services from the VA soon after discharge. He has been diagnosed with PTSD secondary to MST, anxiety disorder – not otherwise specified ("NOS"), and depressive disorder NOS by VA providers.

57.     Mr. Cersosimo sought access to the treatment he needed through the VA.  Mr. Cersosimo's application was denied.

58.     As a result of his VA characterization being Other Than Honorable, Mr. Cersosimo is ineligible for most VA benefits or even a Veteran ID Card.  Other sources alone have been insufficient to provide Mr. Cersosimo the medical care and other resources he needs in order to maintain consistent and long-lasting recovery from his trauma.  He feels trapped in a

constant cycle of seeking recovery then succumbing to the same symptoms of anxiety, depression, insomnia, etc. that he felt when he was first diagnosed with PTSD.

59.     After his service, Mr. Cersosimo held a series of low-paying jobs (including valet, landscaping, construction, oil field work, etc.) that did not provide him the pride and satisfaction he felt being a member of the United States Marine Corps.  One reason that his prospects have been dim is that his discharge characterization prevents employers from having confidence in his capabilities.

60.     Despite these setbacks, Mr. Cersosimo is a committed father to his two daughters, ages 8 and 6.  He currently runs a small, yet expanding, lawncare business with his brother called "Tony's Lawns," and has a few employees.  He remains committed to counseling, despite the difficulties in obtaining affordable and consistent healthcare, and has not had any issues with substance abuse since April 2014, when his first daughter was born.

### The NDRB Hearing and Decision

61.     Only a few months after his discharge, on August 24, 2012, Mr. Cersosimo sought relief *pro se* from the NDRB, seeking to have his discharge characterization changed to an Honorable discharge.  Subsequently, the NDRB denied Mr. Cersosimo's request for a change in his discharge characterization.

62.     On January 25, 2018, Mr. Cersosimo again submitted his application to the NDRB asking it to grant him a discharge upgrade.  His application was accompanied by a memorandum in support and associated exhibits, as well as a request for a Personal Appearance Hearing.

63.     On July 11, 2019, the NDRB sent Mr. Cersosimo a scheduling letter granting him a Personal Appearance Hearing.

64.     On November 6, 2019, Mr. Cersosimo's Hearing took place before an NDRB panel of five career military officers:  Lieutenant Colonel McElman (Presiding Officer), Senior Chief Petty Officer Fortney, Commander Mei, Lieutenant Commander Collins, and Master Sergeant Baker.  None of these panel members is listed with credentials in their title indicating they are a physician, clinical psychologist, psychiatrist, or other medical professional with training in PTSD or mental health disorders generally.  The credentials of the panel members were also not disclosed at Mr. Cersosimo's hearing.  At the Hearing, Mr. Cersosimo testified as to the PTSD symptoms that he experienced as a result of the sexual assault (*e.g.*, nightmares, insomnia, and reliving the experience).   Mr. Cersosimo explained how these symptoms contributed to his substance abuse, feeling that he needed the substances in order to cope.  He testified that he still requires and remains in treatment for PTSD symptoms related to the assault, noticing negative effects when he misses his treatment appointments due to lack of insurance.

65.     On November 20, 2019, the NDRB issued a Review of Discharge Decision Document and Addendum, denying relief to Mr. Cersosimo ("NDRB Decision").

66.     Alarmingly, the NDRB Decision fails to align with what actually occurred at the Hearing in many key respects.

67.     Despite the occurrence of the Hearing, the NDRB Decision was labeled "Documentary Review."

68.     The NDRB Decision states "Representation: None," despite the fact that Mr. Cersosimo has counsel of record and was represented at the Hearing.  Mr. Cersosimo was also accompanied at the Hearing by his father and his father's longtime girlfriend.

69.     The NDRB Decision does not provide a discussion of any physician, psychologist, or psychiatrist opinion that informed the Board's reasoning on Mr. Cersosimo's

claim of service-related PTSD.  The Decision similarly does not indicate that the panel sought any advice or counsel in the review from a psychiatrist, psychologist, or social worker with training on mental health issues associated with PTSD.

70.    Most notably, the NDRB Decision was issued without regard to the panel who actually attended the Hearing.  The Record of Vote accompanying the NDRB Decisions lists five Board members and their votes: "F. J. MCELMAN, LTCOL, USMC, Presiding Officer; M. E. HERNANDEZ, LTCOL, USMC; J. MEI, CDR, MC, USN; M. S. COLLINS, LCDR, MC, USN; and V. R. BAKER, MSGT, USMC, Recorder."  Lieutenant Colonel Hernandez was not present in Mr. Cersosimo's Hearing, yet recorded a vote.  Likewise, there is no record of a vote by Senior Chief Petty Officer Fortney, who was present at the Hearing.

## CLAIMS FOR RELIEF

71.    The APA provides that a reviewing court "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2).

72.    An agency must give adequate reasons for its decisions.  Agency action is unlawful if the agency failed to articulate a rational connection between the facts found and the choice made, failed to consider an important aspect of the problem, or offered an explanation for its decision that runs counter to the evidence.  Agencies therefore must examine all relevant issues and consider reasonable alternatives before deciding a course of action.

73.    The NDRB Decision is unlawful when judged against these standards.

## FIRST CLAIM FOR RELIEF

**Violation of APA— The NDRB's Decision was Arbitrary and Capricious, and/or Unsupported by Substantial Evidence**

18

74.     Mr. Cersosimo incorporates the allegations in paragraphs 1 through 73 above.

75.     The NDRB Decision is arbitrary and capricious, or an abuse of discretion, because it fails to afford liberal consideration to Mr. Cersosimo's MST-related PTSD pursuant to 10 U.S.C. § 1553(d)(3)(A)(ii), and ignores entirely the robust guidance outlining how that liberal consideration should be deployed in practice.

76.     The NDRB Decision pays lip service to 10 U.S.C. § 1553(d)(3)(A)(ii) in "review[ing] the case with liberal consideration that a mental health consideration PTSD, TBI [traumatic brain injury], or MST contributed to the circumstances resulting in the discharge of a lesser characterization."  However, there is no support in the NDRB Decision that the required liberal consideration was afforded despite Mr. Cersosimo's in-service diagnoses of PTSD (caused by MST) from civilian mental health providers.  At minimum, the NDRB Decision fails to provide any evidence of the PTSD or MST it considered.  Moreover, the NDRB could not have provided liberal consideration of evidence provided at the Hearing, as the Decision did not take the Hearing into account at all.

77.     The NDRB Decision fails to follow the policies set forth in the Hagel, Carson, and Kurta memos, which require, *inter alia*, that the Board consider PTSD as well as other related mental health conditions as a mitigating factor in the misconduct that caused Mr. Cersosimo's Other than Honorable discharge, and afford liberal consideration to his request to upgrade his discharge characterization.

78.     The NDRB Decision also fails to follow the policies set forth in the Wilkie Memo, which stresses the importance of rehabilitation and outlines mitigating factors the Board should consider when applicable, including an applicant's "acceptance of responsibility, remorse, or atonement for misconduct," post-discharge conduct, and whether the misconduct

may have been a "youthful indiscretion." The NDRB Decision voices no regard for Mr. Cersosimo's attempts at rehabilitation post-service and makes no reference to the mitigating considerations outlined in the Wilkie Memo.

79.    These memos are particularly applicable in view of MST leading to a PTSD diagnosis. MST is pervasive in military circles and often goes unreported due to the intense feelings of shame felt by the person assaulted. The VA has recognized the reactions that MST survivors exhibit, many of which Mr. Cersosimo experienced after his assault occurred in 2011 (*e.g.* strong emotions, feelings of numbness, and problems with alcohol or other drugs).

80.    Rather than assess the impact these reactions had on his behavior, as the memoranda require, the NDRB Decision ignores them in summarily stating, "[a]lthough an individual may be diagnosed with PTSD, both the service member along with the command have the responsibility of upholding good order and discipline. A PTSD diagnoses does not excuse the Applicant's misconduct. While the Applicant may feel PTSD was an underlying cause of his misconduct, the record clearly reflects his willful misconduct and demonstrate he was unfit for further service."

81.    The Board ignored the memoranda and also considered extraneous factors unsupported by the evidence of record in denying Mr. Cersosimo relief, thereby holding Mr. Cersosimo to a higher standard than is mandated by 10 U.S.C. § 1553 and the guiding memoranda. The NDRB Decision discusses Mr. Cersosimo's alleged violation of Article 112a (Wrongful use, possession, manufacture or introduction of controlled substance), stating that such violation "is one such offense requiring mandatory processing for administrative separation regardless of grade, performance, or time in service. This usually results in an unfavorable characterization of discharge . . . ."). This statement is applicable to how Mr. Cersosimo's chain

of command may have treated a violation of Article 112a in real-time, but it is not a restraint on, or even relevant to, the Board's review here. The NDRB Decision essentially concludes that its hands were tied (a) because there is no exception to being administratively separated for drug abuse with an unfavorable characterization of discharge; and (b) because Mr. Cersosimo's "command did not pursue a punitive discharge but opted instead for the more lenient administrative discharge." In other words, the NDRB instead held against Mr. Cersosimo the fact that, many years earlier, his chain of command decided not to pursue a court-martial for his misconduct in the first instance, apparently concluding he has already received the benefit of leniency that an upgrade would provide. These findings only serve to establish that the NDRB failed to conduct its own independent review or analysis of the propriety and equity of Mr. Cersosimo's discharge characterization based on the evidence. The Decision contains no meaningful discussion of how Mr. Cersosimo's characterization of discharge was equitable for an individual who suffered MST that caused him to be diagnosed with PTSD in-service, which led to his misconduct.

82. Most importantly, the NDRB Decision provides no consideration of how PTSD may have affected Mr. Cersosimo's conduct. It states more than once that "[w]hile the Applicant may feel PTSD was an underlying cause of his misconduct, the record clearly reflects his willful misconduct and demonstrate [sic] he was unfit for further service." The NDRB decision fails to explain its finding that Mr. Cersosimo engaged in willful misconduct when his actions were clearly influenced by PTSD symptoms caused by MST. The NDRB Decision states that Mr. Cersosimo's record of service includes four retention warning counselings and four NJPs, but includes no analysis of them or why they "clearly demonstrate" unfitness for service—particularly in view of the PTSD he was experiencing at the time of these incidents.

## SECOND CLAIM FOR RELIEF

**Violation of APA— The NDRB's Decision was Arbitrary and Capricious, and/or Unsupported by Substantial Evidence**

83.     Mr. Cersosimo incorporates the allegations in paragraphs 1 through 82 above.

84.     The NDRB Decision is also arbitrary, capricious, or unsupported by substantial evidence, because it fails to provide a reasoned explanation for denying Mr. Cersosimo's discharge upgrade request.   The NDRB's factual determinations are not supported by any evidence, and the explanations provided for the decision, or lack thereof, run counter to the evidence presented by Mr. Cersosimo at the Hearing.

85.     The crux of the NDRB Decision is found in the following paragraph:

> After a thorough review of the available evidence, to include the Applicant's issues, summary of service, service record entries, and discharge process, the Board found the discharge was proper and equitable. Therefore, the awarded characterization of service shall remain **UNDER OTHER THAN HONORABLE CONDITIONS**, the narrative reason for separation shall remain **MISCONDUCT (DRUG ABUSE)** with a corresponding separation code of **HKKI**, and the reentry code shall remain **RE-4B**.

86.     The Board limited its review to what it termed "Applicant's issues," apparently referring to three of the issues described in the memorandum of support that accompanied Mr. Cersosimo's application, but provides no meaningful discussion or analysis of the issues or evidence that were considered, including issues and evidence that were raised at the Hearing.

87.     In particular, at the Hearing, counsel for Mr. Cersosimo explained that his prior administrative separation proceedings were fundamentally flawed.  Those proceedings failed to consider whether Mr. Cersosimo's PTSD mitigated his conduct, and incorrectly determined that his PTSD was due to *pre*-service trauma.  *See* ¶¶ 34, 51–52.  During his Hearing, Mr. Cersosimo presented medical records and testimony establishing that his PTSD arose after the sexual assault

he suffered during his service, and that it had a substantial effect on his conduct.  The Board's Decision makes no mention of the factual errors in the record and fails to consider how these factors impacted Mr. Cersosimo's conduct or his subsequent discharge characterization.  Instead, it simply concludes, without reasonable explanation, that "evidence of record did not show that the PTSD was a sufficient mitigating factor to excuse [Mr. Cersosimo's] conduct."  The Board determined that Mr. Cersosimo's exercised "willful misconduct and demonstrate[d] he was unfit for further service."  This determination is unsupported by any evidence other than a vague reference to the "the record."  The Decision also and fails to point to any evidence supporting Mr. Cersosimo's alleged "*willful* misconduct," fails to provide its standard for determining whether his misconduct was willful, and fails to explain what difference willful misconduct makes to its discharge characterization analysis.  On the contrary, Mr. Cersosimo presented ample testimony and documentary evidence pointing to his MST-related PTSD as a root cause for his post-assault behavior and eventual discharge.

88.    Mr. Cersosimo has suffered a legal wrong as a result of the NDRB's arbitrary, capricious, and unsubstantiated decision in consideration of his discharge upgrade request.

89.    As a direct result of the unlawful Decision, Mr. Cersosimo was deprived of his right to have meaningful review by the NDRB.

90.    Mr. Cersosimo seeks relief in the form of a discharge upgrade or, in the alternative, a new Personal Appearance Hearing Review in front of a new panel.

## THIRD CLAIM FOR RELIEF

### Violation of APA—The NDRB's Actions Were Not in Accordance With Law

91.    Mr. Cersosimo incorporates the allegations in paragraphs 1 through 90 above.

92.    The NDRB's actions were not in accordance with law because they run afoul of federal statute and applicable regulations including, but not limited to, 10 U.S.C. § 1553 and 32 C.F.R. § 724.

93.    First, the NDRB's actions fail to comport with the procedural requirements set forth in 10 U.S.C. § 1553, specifically with respect to those concerning applicants with PTSD and sexual trauma.

94.    Upon information and belief, none of the NDRB panel members who presided over Mr. Cersosimo's Hearing and/or recorded a vote in his decision is a certified clinical psychologist, psychiatrist, or physician with special training on mental health disorders as required by § 1553(d)(2) and (e).  Though the Board's decision states "pursuant to § 1553, the NDRB included a member who is a physician, clinical psychologist, or psychiatrist," no such credentials are indicated in any panel member's title and no such credentials were made known to Mr. Cersosimo or his counsel during the Hearing.

95.    With regard to Mr. Cersosimo's military sexual trauma, there is nothing in the Decision to support that the NDRB "s[ought] advice and counsel in the review from a psychiatrist, psychologist, or social worker with training on mental health issues associated with post-traumatic stress disorder or traumatic brain injury or other trauma as specified in the current edition of the Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association" as required by § 1553(d)(1)(B).

96.    Second, the NDRB's actions fail to adhere to the regulations set forth in 32 C.F.R. § 724, which instruct the Board to "elicit[] all facts necessary for a full and fair review" and "consider all information presented to them by the applicant," including available official records, documentary evidence submitted by or on behalf of an applicant, presentation of a

hearing examination, testimony by or on behalf of an applicant, oral or written arguments presented by or on behalf of an applicant, and any other relevant evidence."

97.    The NDRB failed entirely to grapple with issues raised at the Hearing or analyze extensive evidence provided by Mr. Cersosimo (*e.g.*, new evidence and testimony presented at Hearing, and mitigating circumstances).

98.    The NDRB Decision makes no mention of the Hearing that took place on November 6, 2019, and instead refers only to "DOCUMENTARY REVIEW" as a basis for the decision.  Worse, the NDRB Decision does not reference or discuss any documents that were allegedly reviewed in the process.

99.    The NDRB Decision pays lip service to "complet[ing] a thorough review of the circumstances that led to the discharge and the discharge process to ensure the pertinent standards of equity and propriety were met."  But the NDRB could not have done so where no review of evidence from the Hearing took place.  The Board's supposedly "thorough review" includes no analysis or discussion of documents or evidence relating to mitigating circumstances, namely Mr. Cersosimo's in-service MST or his corresponding in-service PTSD diagnosis.  Mr. Cersosimo presented ample documentary evidence of his in-service MST and PTSD including years of medical records and detailed testimony during the hearing, none of which was even mentioned in the NDRB's decision.

100.    The NDRB Decision is also rife with inconsistencies.  For example, the Decision lists a particular Board member as having contributed a vote, yet that voting member was not present at the Hearing.  Indeed, the Decision makes no reference to a Hearing whatsoever and lists Mr. Cersosimo's representation as "none" despite the fact that Mr. Cersosimo was

accompanied and represented by a team of attorneys at the hearing, with his father and his father's longtime girlfriend also in attendance.

101.    The NDRB's actions are also not in accordance with law because they reflect a vote taken by a panel different from the one present at Mr. Cersosimo's Hearing.  The Board is incapable of having considered "all relevant issues" in its Decision if one of the voting panel members was not present to hear the testimony presented at the Hearing.  Moreover, the NDRB's vote in Mr. Cersosimo's case is in direct contravention of its voting requirements.  Pursuant to 32 C.F.R. § 724.804(g), "[v]oting shall be conducted in closed session, [with] a majority of the votes of *the five members*," *i.e.*, the NDRB panel, "constituting the NDRB decision." (emphasis added).

102.    As a result, Mr. Cersosimo did not actually receive a hearing pursuant to federal regulations or applicable DoD instructions.  The NDRB acted contrary to law in failing to base its decision on "such other evidence as may be presented to the board" and failing to provide a forum for presentation of that evidence "in person," *i.e.*, at a hearing.  32 C.F.R. § 724.202(a)(3). "An applicant, upon request, is entitled to a records review *and a hearing*."  DoDI 1332.28 E3.2.3 (emphasis added).  The NDRB's actions were not in accordance with law where they fail to adhere to the requirement that the Board "shall identify and address issues after a review of the following material obtained and presented in accordance with this Manual and any implementing instructions of the NDRB: available official records, documentary evidence submitted by or on behalf of an applicant, presentation of a hearing examination, testimony by or on behalf of an applicant, oral or written arguments presented by or on behalf of an applicant, and any other relevant evidence." 32 C.F.R. § 724.804(d).

103.    Finally, the NDRB's actions were not in accordance with law because the NDRB failed to follow the requirement of 10 U.S.C. § 1553(d)(3)(A)(ii) that claims involving PTSD related to sexual trauma be afforded liberal consideration, and ignoring entirely the robust guidance outlining how that liberal consideration should be deployed in practice.  Mr. Cersosimo incorporates by reference the allegations set forth in his First and Second Claims for Relief.

104.    Mr. Cersosimo has suffered a legal wrong as a result of the NDRB's deficient decision in consideration of his discharge upgrade request.

105.    As a direct result of the unlawful decision, Mr. Cersosimo was deprived of his right to have meaningful review by the NDRB.

106.    Mr. Cersosimo seeks relief in the form of a discharge upgrade or, in the alternative, a new Personal Appearance Hearing Review in front of a new panel.

### RELIEF REQUESTED

Antonio Cersosimo respectfully requests that this Court enter judgment against the United States and award the following relief:

a.    Set aside the NDRB Decision as being arbitrary, capricious, unsupported by substantial evidence, or otherwise not in accordance with the law;

b.    Upgrade Mr. Cersosimo's discharge characterization from "Under Other than Honorable Conditions" to "Honorable" or "General Under Honorable Conditions;"

c.    Correct Mr. Cersosimo's Marine Corps records—including but not limited to his DD Form 214 dated April 30, 2012—consistent with the above relief;

d.    In the alternative, grant Mr. Cersosimo a new Personal Appearance Hearing Review in front of a new panel of the NDRB;

e.    Award Mr. Cersosimo costs and attorneys' fees; and

f.    Grant any other relief the Court deems proper.

Dated: January 10, 2023                    Respectfully submitted,

Joshua J. Fougere (DC Bar No. 1000322)
Lauren Cranford Katzeff (DC Bar No. 1027237)
Amana Abdulwakeel (DC Bar No. 1672222)
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711
jfougere@sidley.com
lkatzeff@sidley.com
aabdulwakeel@sidley.com

Rochelle Bobroff (DC Bar No. 420892) David
Sonenshine (DC Bar No. 496138) NATIONAL
VETERANS LEGAL SERVICES PROGRAM
1100 Wilson Boulevard
Suite 900
Arlington, VA 22209
Telephone: (202) 621-5681
Facsimile: (202) 328-0063
rochelle@nvlsp.org
david@nvlsp.org

*Attorneys for Plaintiff*

28